## PAQUETTE *v.* A CARGO OF LUMBER.

*(District Court, S. D. New York.* February 28, 1885.)

DEMURRAGE—VIS MAJOR—OBSTRUCTION BY FIRE DEPARTMENT—CUSTOM.

A canal-boat, laden with lumber, was sent to discharge at the wharf of S. & Co., who had bought the lumber of the shipper's agent. When she had been discharging there about two hours a fire broke out in S. & Co.'s lumber yard, adjoining, and two fire department boats, coming up along-side the canal-boat, laid hose across her, so as to prevent the further discharge of the cargo. This continued some four or five days, after which the residue of the cargo was discharged. The owner of the canal-boat libeled the lumber for demurrage. No bill of lading was put in evidence, but it was proved that, by the custom in the lumber trade, four or five lay days upon such cargoes were allowed, and that it was the duty of the captain of the boat to put the lumber on the wharf, the obligation of the receiver under the custom being only to furnish a proper berth and room on the dock to receive the lumber, so that it might be discharged within that period. Such berth, facilities, and room were furnished by S. & Co. *Held,* that the burden was upon the libelant to prove that some fault of S. & Co. caused the delay; that when it became necessary for the fire department to use the position where the canal-boat lay, it was the duty of S. & Co. to provide means to discharge elsewhere, and they would have been liable had it appeared that the subsequent delay was caused by their inability to do so. But the evidence showed that the firemen would not allow the boat to be moved, and that the libelant was unable to move her; *held,* that the obstruction caused by the fire department was in the nature of a superior force, for which S. & Co. were not responsible; and that the loss must remain where it fell.

In Admiralty.

*Hyland & Zabriskie,* for libelant.

*Goodrich, Deady & Platt,* for respondents.

BROWN, J. The libel in this case was filed to recover damages in the nature of demurrage for seven days' detention of the canal-boat Mary A. Bigelow, in the delivery of the lumber libeled, to G. L. Schuyler & Co., Forty-second street, East river. The lumber was brought from Canada, consigned to the shipper's agent here, and by him sold to Schuyler & Co. The boat arrived September 17, 1883, reported to the agent, and on that day was directed to Schuyler & Co.'s dock, where she arrived on the morning of the 18th. It was proved that, by the custom in the lumber trade, four or five lay days upon such cargoes were allowed, and that it was the duty of the captain of the boat to put the lumber upon the wharf; the obligation of the receiver, according to the custom, being only to furnish a proper berth and room on the dock to receive the lumber so that it might be discharged within four days after reporting arrival. A proper berth, facilities, and room for unloading were furnished by Schuyler & Co. on the 20th, and at 7 A. M. on the morning of that day the boat, having been hauled to her berth, commenced to discharge. Two days were sufficient time to discharge the lumber after commencing, and only that time was finally employed in the actual work of discharge. But about two hours after commencing the discharge a fire

broke out in the yard of Schuyler & Co., and two fire-boats belonging to the fire department came up to the wharf, made fast along the outside of the libelant's boat, and ran several lines of hose across his boat, so as to prevent any further discharge of the lumber. This continued some four or five days, after which the fire-boats moved away, and the residue of the lumber was discharged.

The liability for demurrage, or damages in the nature of demurrage, must rest either upon express contract, or neglect of some duty imposed by law or custom. Where, by the terms of the bill of lading, the consignee has bound himself to discharge the vessel within a certain time, he must bear all risks of interruption. In this case there was no bill of lading put in evidence; consequently, the only ground of liability is some neglect of duty by Schuyler & Co. Under the custom allowing them four or five lay days, they were only bound to furnish reasonable facilities for the captain to discharge, by providing him with a suitable berth and space in which to discharge the lumber within that time. When it became necessary for the fire department to make use of the position where the canal-boat was, I think it was the duty of Schuyler & Co., under this custom, to provide means to discharge elsewhere, as much as though the wharf at that place had tumbled down, or become unsafe through the elements, such as ice or storm, (*Bowen* v. *Decker*, 18 FED. REP. 751;) and any delay in furnishing such facilities would be at their risk, because covered by the four or five lay days allowed by the custom. Had it clearly appeared that that delay was solely in consequence of their inability to furnish any other berth, I should hold them liable for the interruption through the fire. But the evidence does not establish this. On the contrary, it indicates that the firemen would not allow the libelant's boat to be moved, because it would interrupt their work. The foreman testified that he endeavored to get the fire-boats to let the canal-boat out, so as to go to another place; but the firemen said it could not be done, and refused to allow the boat to be moved. The libelant had employed Schuyler & Co. to discharge the boat. He made no request of the firemen to be permitted to remove elsewhere.

The burden of proof is upon the libelant to show that some fault of the respondents *caused the delay*. *Fish* v. *One Hundred and Fifty Tons, etc.*, 20 FED. REP. 201. Whether Schuyler & Co. had any other available berth or not (which does not clearly appear on the evidence) is immaterial, if the libelant was in fact unable to move his boat so as to avail himself of it; and such is the weight of evidence. Schuyler & Co. are not responsible merely for the obstruction caused by the interference of the fire department. When that interruption arose, it was equally the duty of Schuyler & Co. to provide another berth, and the duty of the libelant to go to it at once. The risk of ability to provide another berth was on Schuyler & Co. The risk of being able to get away from the obstruction caused by the fire department, and to go to another berth, was upon the libelant. As the boat could not

get away on account of this obstruction, and as this obstruction did not arise through any fault of Schuyler & Co., the boat was not kept there by their fault; and hence the delay was not through their fault any more than if the libelant's boat had been sunk at the birth assigned, and he had been unable, in consequence, to put the lumber upon the wharf within the time provided by custom. The obstruction was in the nature of a superior force; and if the libelant could not extricate his boat, the loss must remain where it fell,—as much so as if the delay had arisen from the boat's sinking at her berth. *Fish* v. *One Hundred and Fifty Tons, etc., supra,* and cases there cited; *Ford* v. *Cotesworth,* L. R. 4 Q. B. 127, 133; *Cunningham* v. *Dunn,* 3 C. P. Div. 443; *Postlethwaite* v. *Freeland,* L. R. 5 App. Cas. 599, 621.

Any delay arising from other causes is fully covered by the amount tendered and deposited in court. The libelant will be entitled to the amount deposited. The costs must be taxed to either party according to the date of the payment of the money into court.